Hear ye, hear ye. This Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Joseph E. Burkett presiding, along with Justice Donald C. Hudson and Justice Liam C. Brennan. The case is No. 219-0409, Gregory v. Baird, Plaintiff-Appellee v. Ogden-Chevrolet, Inc. et al., Defendants' Appellants. Arguing for the appellant, David Flake, George N. Elizabeth Mudd, Iozzo, William B. Kelly. Arguing for the appellee, Rick A. DelGius. Justice Burkett, it's to you. Justice Burkett, you were muted. Go ahead. You may proceed, Mr. Vidalia. Thank you. This is George Vidalia on behalf of Trustee David Flake. The trust involved in this case consisted of Fred Iozzo Sr.'s assets placed in trust for the benefit of his son, Mark, and Mark's descendant. Trial court's obligation was to look at the following, in terms of the trust itself and the requirements of 735 ILCS 5-2-1403. That section states in pertinent part, no court, with exceptions not applicable, shall order the satisfaction of a judgment out of any property held in trust for the judgment debtor, if such trust has, in good faith, been created by or the person other than a judgment debtor. It is undisputed in this case and the court so found below that the assets proceeded from a person other than a debtor, that is, it was Fred's assets, not Mark's. There was no evidence or any finding of any bad faith in the creation of the trust. That should have been the end of the discussion. However, Merritt and the trial court improperly focused on the conduct of the trustees rather than on the terms of the trust and the section 1403 requirements. That is inappropriate because there is no Illinois law supporting review of what the trustee actually did as opposed to what the trustee was authorized by the trust to do in the context of the creation of the trust by section 1403. Otherwise, the trustee would have the unlimited power in all circumstances and regardless of the terms of the trust to set aside a trust simply by engaging in trustee misconduct. I note also that Baird did not induce any evidence and the court did not find that the trustee violated the ascertainable standards set forth in the trust. Baird's cases actually support the trustees argument. Baird relies heavily on Chicago Police Sergeants Association. That supports the trustees argument because the court there looked at the creation of the trust in light of section 1403. The trust was created after the dispute arose that threatened the debtor's assets, unlike here. The debtor was the sole beneficiary, unlike here, and there was no ascertainable standard, unlike here. The standard in Chicago Police Sergeants was best interest of the debtor. Now, I note that Baird discusses a best interest section in this trust, but that did not apply to Mark's assets or distributions. That relates to the separate trust established for the descendants of Mark, not to Mark himself. See, for example, Article 5.1.B regarding the 825 distributions for the descendants, page appendix 45, and Article 9, separate trust discussion at page A49. The Hawley case, H-A-W-L-E-Y, the debtor had the right to the corpus of the trust on a date certain, so it became his property. He then created a new trust, which was thereby a self-settled trust. That is, it did not comport with the requirements of section 1403 that the property come from another person other than the debtor. Community Bank of Elmhurst relies on section 1403 and the property held in trust and property distributed to the debtor, noting that you cannot attach the property held in trust, but once the distribution is made to the debtor, that property can be attached. The remedy for misconduct, which was not even established here for trustee misconduct, is an action by the beneficiary against the trustee, not voiding the trust. The unrebutted testimony of William Sheridan confirms that the trust comports with the trust. Fred Iozzo, Sr., not Mark, was the settlor of the trust, and a trial court so found. The trust was funded with Fred's assets, not Mark's, record 357 to 360. The trust was established years before any dispute between Barrett and Mark, and there was no finding that the trust was created in bad faith in any way. The trust named two trustees, both of whom served as trustees. The trust identified current beneficiaries other than Mark. The trust imposed an ascertainable standard for distributions to Mark and his descendants. There was no finding by the court, and there was no evidence to do that the language itself gave unfettered control to Mark. Rather, the court made no finding whatsoever with respect to that issue. Thank you. Your questions. I have a couple of questions. Mr. Verduglia, the position that when the trust was created, it did not allow Mark, the independent trustee and beneficiary, and take the entire principle at his sole discretion, he didn't have the discretion to do that at any time? Correct. What is that based on? The standard is set forth in the trust at Article 2, and I can pull it up, but the trust language is that he has an ascertainable standard. He has a standard under which he can only withdraw to support his lifestyle as it existed in the last five years. Excuse me. You're not disputing, are you, the trial court's findings that essentially Mark was able to pay personal expenses, bills, household, was able to use the trust for whatever purposes he desired with unfettered discretion. Are you disputing that? I am disputing that he had unfettered discretion. I am arguing that he used the trust assets in the manner to which he had become accustomed in the previous five years, consistent with the terms of the trust. What do you base that on? Give us some examples of what you're talking about. The examples are those expenses were the same expenses he had incurred over the years and paid over the years, and there was no evidence to the contrary. So, I guess maybe let me ask it from a different perspective. What was the limit on his discretion? The limit was his standard of living over the previous five years as set forth in the trust. Standard of living. Okay. I have it this time. Justice Brennan. So, the question that I have is as follows. I can see circumstances where, for example, you have three trustees and the trust says, you know, if a majority of the trustees say this, you know, you can do whatever. I could even anticipate a circumstance where, though it would be hard to enforce, where somebody at least required in a circumstance where there were two trustees that you at least had to confer with or run something by the other trustee. But the way I read this trust, and tell me if I'm wrong, is that Elaine and Mark are entirely independent in their ability to do whatever it is they think is appropriate under the terms of the trust, and one is not a check on the other under the terms of the trust. Let me ask you, is that a correct reading in terms of the duties of the trustees under the terms? I don't think it's correct, if I might be able to say that they can do whatever they want. They can do what is consistent with the terms of the trust. But each one is the independent arbiter of that. Is that fair? Well, there is no other party other than the two of them checking on them to determine whether or not they're complying with the terms of the trust. So, if Elaine thinks that, and I recognize she's no longer active, but we're going back to the time when the trust was corrected and look at the terms of the trust. If Elaine thinks that Mark is exceeding his standard of living over the last five years in terms of spending, what she's supposed to do is to go into the chance report and say, I believe trustee Mark is spending too much money and I'm bringing this action on behalf of the beneficiary Mark. How's that suit going to look from a practical standpoint? She wouldn't be bringing it on the behalf of the beneficiary Mark, she'd be bringing it on behalf of the trust and the other beneficiaries to the trust. That gets to the vested interest issue, of course, which you haven't addressed and I know that the lawyer for that is going to address. But what if this court were to determine as the trial court did that the children of Mark or the descendants of Mark weren't vested beneficiaries? At that point, who would Elaine be bringing that suit on behalf of? Well, she still has to bring it on behalf of the trust itself. I'm not sure I'm following. If Mark's the only beneficiary, I realize she's a trustee on behalf of the trust, but she'd really be saying that Mark gave too much money to Mark under the terms of the trust. Is that fair? If he's the only beneficiary? Yes, but she had the power to do that. She had the power to shut him down and disagree with him if she disagreed with him on a spending issue. The only power, of course, being to go to court, not anything under the terms themselves having to agree or anything like that. Well, I guess I agree with you, but in any instance, when there's an issue of trustee misconduct, ultimately your recourse is to file an action in court. That's what you do in order to rectify a trustee misconduct situation. I respect that and I agree with it. Let me ask you a question. Should we be at all concerned with the testimony of Mr. Sheridan? I realize that it was allowed, but my reading of all the case law and my understanding is that extrinsic evidence absent ambiguous terms should not be considered. That issue was raised in the trial court and my response then and now is that he is not testifying to the interpretation of the terms. He is testifying to the context of the creation of the trust in order to support our argument that the trust was created in good faith and to rebut. Actually, there was no evidence to rebut, but the potential evidence that somehow the trust was created in bad faith. That is his testimony with respect to the tax consequences and his testimony with respect to the ascertainable standards. All were directed toward establishing the good faith aspect under section 1403. Is good faith defined anywhere? I'm not aware that it's defined in 1403, no. I didn't think so, but I was hoping you'd tell me otherwise. Would it be unfair to define good faith as does it comply with the common law and statutory laws that relates to the creation of trusts? That certainly could be one definition. Let me ask a different question. What definition would you give it? I would define it as having good reasons to create the trust and creating the trust in an appropriate format. All right. Thank you. Okay. I have just a couple of questions. Sir, would you agree that the rationale that prevents creditors from reaching the trust's assets is that the beneficiary cannot reach them, but it would strain logic and law to continue to the trust's assets? Are you familiar with that principle? I'm familiar with the principle. I believe you're referring to merger. Yeah. Well, here, as in in rate, are you familiar with in-ray marriage of sharp? I have read the case. Yes. How is in-ray marriage of sharp different from the facts of this case with respect to requiring the beneficiary to turn over assets from the trust? How is that case any different? Well, I can't call to mind the specifics of the sharp case. I have read it, but the bottom line is if the trust as created comports with 1403, then it is inappropriate to attack the corpus of the trust by a judgment creditor. Well, in in-ray marriage of sharp, the beneficiary of the trust, which was created by the grandfather, refused to use assets from the trust to pay his child support obligation. He was held in contempt of court, and this court affirmed. And we actually cited McCoy. I just, I mean, the factually... I'm sorry, I didn't mean to interrupt. I said factually it's a little different because we're talking about child support as opposed to paying a judgment creditor. But the reality is that in this case, as in sharp, the beneficiary, who is the debtor, was living off of the assets in the trust and had access to the trust. And here you have Mark is both and was both the beneficiary and the trustee. And he used that, those assets to purchase and to sustain his standard of living, including buying a 20, what's a $27,000 Rolex watch had to do with the way his lifestyle was in the last five years. I don't recall that number being associated with the value of the watch, frankly, but I don't have the number in hand. I made a note of it. Thank you for reminding me of the facts of sharp. Section 1403 has a specific exclusion for child support. Okay. And you don't contest the issue that he was for a substantial period of time, both the trustee and beneficiary, correct? With access to the assets. He was not officially both trustee and sole beneficiary at any time. He was effectively for some period of time, when it appears that Elaine could no longer be trustee, he was the trustee until they appointed fly. But the fact of the matter is he is not now, has not ever been the sole beneficiary of the trust. Section 4A authorizes a trustee in its sole discretion to provide for Mark's support, correct? Correct. Okay. And that, that is in reality, what the trust assets were used for to provide for Mark support. Correct. Okay. All right. That's, that's all I have. Mr. Kelly. Thank you. Good afternoon. Good afternoon, ma'am. He's important. Good afternoon. The council of record. My name is William Kelly and I represent Alicia Iozzo, Quentin Iozzo and Elizabeth Mudd Iozzo as the mother of two minor children of Mark Iozzo. My clients are involved in this appeal because they were denied the opportunity to participate in the underlying proceedings in which the trial court set aside a trust, which was established by their grandfather for not only the benefit of their father, but also for their benefit. As you are aware from our briefs filed in this regard, my clients maintain they were necessary parties to the underlying motion to set aside the trust. And the trial court's decision to set aside the trust is null and void due to their absence from the proceedings. The trial court denied my clients the opportunity to intervene primarily because it was contingent beneficiaries of their grandfather's trust. In fact, however, they were direct beneficiaries of that trust. Under the Illinois Trust and Trustees Act, it states that a primary beneficiary means a beneficiary of a trust who as of the date of the determination is either currently eligible to receive income or principal from the trust or a presumptive remainder beneficiary. I would argue that my clients under either of those standards, they were eligible to receive income or principal from the trust and they were a presumptive remainder beneficiary. Under the Illinois Trust and Trustees Act, they were in fact primary beneficiaries. More importantly, my client's status as necessary parties arises from the language of the trust itself. In the very first recital of the trust, Fred Iozzo states, and I again quote, whereas it is the intention of the grantor hereby to create an irrevocable trust for the benefit of grantor's son Mark and Mark's descendants. At the time Fred established the trust in 2003, two of my clients, Elisha Iozzo and Quentin Iozzo, had already been born. Clearly, their grandfather intended them to be beneficiaries of the trust. In addition to the language I quoted from the recital, in Article 4 of the trust provides, and I again quote, the discretionary trust shall be held as a separate trust of which the beneficiaries shall be Mark and all descendants of Mark who shall be living from time to time during the period of such trust. Again, the specific language of the trust made my clients direct rather than contingent beneficiaries. In addition to this very specific language of the trust, Section 2 of Article 4 granted my client's father a limited power of appointment to distribute any portion of the trust estate to all or any one of his descendants, which included my clients. This language is obviously significant because under the decision in Oglesby versus Springfield Marine Bank 385 Illinois 2nd 414, individuals subject to the potential exercise of a limited power of appointment are deemed to be necessary parties. And as I indicated in our briefs, the Oglesby decision was cited favorably by the court in First National Bank of versus Screen Gems 40 Illinois Appellate 3rd 427. As a result, Elisha Iozzo, Quentin Iozzo, and Mark Iozzo's two minor children were necessary parties to the underlying proceeding, and the trial court's failure to allow them to intervene was erroneous and renders the order setting aside the trust null and void. Although I maintain my client's status as necessary parties renders the provisions of Section 2-408 of the Illinois Code of Civil Procedure move, even under Section 2-408, my client should have been granted the right to intervene. In particular, Section 408 provides that a party seeking leave to intervene, and I quote, shall be permitted as of right to intervene in an action when the representation of the applicant's by existing parties is or may be inadequate, and the applicant will or may be bound by an order of judgment. There can be no dispute my clients would be bound by any order entered in connection with the motion to set aside the trust. Further, needless to say, under the fact of this case, the representation of my client's interest by the existing parties could not be adequate. Mark Iozzo and his children would appear to have been have conflicting interest from the language of the trust. More importantly, Fred Iozzo's grandchildren, whom he desired to provide for in the trust, have been deprived of their beneficial in the trust pursuant to the trial court's order. The terms of Section 408A were mandatory, and the trial court erred in denying my client's leave to intervene. Just briefly wrapping up, I'd like, I at least like to point out the fact that in my opinion, the Second District Court's decision in Community Bank of Elmhurst versus Kline is, governs, and that the remedy that the plaintiff should have been allowed to receive was essentially a charging order, a lien against any distributions. Thank you. Justice Hudson, your questions. Yes, Mr. Kelly, with respect to the argument that your clients had the right to intervene in the proceedings, I want to ask you a couple of questions that bear on that issue. First of all, during Mark's lifetime, is it true that the only means by which your clients can receive a distribution under the discretionary trust while Mark is alive is if one of the trustees determines at their sole discretion that your clients had unusual expenses? Is that true? Yes, but that applies to Mark as beneficiary. Even, even monies granted to Mark are subject to the trustee's discretion. But on this test, your clients cannot, while Mark is alive, receive anything unless Mark or his mother were to agree with that, correct? Again, I would, I would say yes to that, but if in fact there was a situation that came up that which they were entitled to a, to a receipt of income or principal, I think they would have an enforceable right if either Mark or Elaine made an erroneous decision. They would have an enforceable right immediately. The other way that they, your client certainly could receive a distribution is if they were alive at the time that Mark dies, is that correct? Absolutely. Here's the problem I'm having with that. Both of those items, both of those means by which they would obtain some distributions under the Slosser case, which I'm sure you read, which cites the city of Macomb case, that case held that that type of interest is contingent and does not provide standing to intervene. So how do you answer that holding in the Slosser case? Oh, again, I think the Slosser case looked at it improperly. In fact, you know, some of the language in that was different than what we have here. Again, I think, you know, focusing on the simple Slosser case ignores all the other case law. In fact, ignores the language of the trust itself, which I think the trial court is what is bound by, the language of the trust itself. All right, thank you. That's all I have. Thank you. I have no questions. Mr. Del Giusto. Go ahead. I'm sorry. I'm sorry. Go ahead. So I did have a question. You mentioned during your argument that, you know, there are certain circumstances where the children of Mark might have... Let me ask it differently. As I read the trust document, there is this power that the trustees have, if they chose, to create discretionary trusts under the trust that would have... If something's put in a discretionary trust for one of the children, that corpus is... That's irrevocable, correct? If they create a discretionary trust, that power exists. I'm not sure I quite understand it. I think that's accurate, but the trust itself was considered a discretionary trust. I know the trust is considered a discretionary trust, but it also allows for the creation of additional discretionary trusts for the grandchildren at the discretion of either of the trustees. Is that correct? That's correct. Yes. And if that were to occur, that trust would be irrevocable as it relates to whatever is put in that sub-discretionary trust, for lack of a better word. Would that be correct? Has that ever... There was nothing in the record to suggest that that had ever happened, that there was a discretionary trust created under the main discretionary trust for the grandchildren. I just want to make sure because I didn't read it, but... I'm not aware of any separate trust for any of the grandchildren. Okay. But the document itself allowed for that at the discretion of the trustees? Correct. Yes. Okay. And that language for the benefit of and for the happiness of, that comes in only under those discretionary trust situations. Correct? It doesn't apply to Mark. That's correct. That's the way I read the trust. All right. All right. Thank you. Yes. Thank you. Mr. Del Giudice. Yes. Thank you. May it please the court. Good afternoon. There are two... Let me start with the set-aside arguments. There are two conjunctive reasons why the trust is properly set-aside. One is the language itself of the trust, which creates no limits, unfettered even just by the language of the trust. And secondly, it's based on the world of the case law. And the appellant's entire argument is based on the premise that the court can only look at Section 1403, can only look at the settlor and the good faith. Such a standard would render generations of good, still valid common law nullity, if that was the standard. The appellants agree it's good law. They cite it. Yet they make theological and erroneous argument that 100 years of good precedent must be ignored in this case. They want the trial court and now the appellate court to ignore that total control by Iozo as the beneficiary and the trustee to control the assets of that trust with impunity. There's no legal support for that proposition. The trial court reviewed extensive briefing, oral arguments, had an evidentiary hearing after the oral arguments, heard witnesses, documents, written closing briefs, extensive briefings on motion to reconsider. And he found that after viewing the testimony and evaluating the witnesses, and he quotes Section 1403, he didn't ignore it. He then says, however, the case law in Illinois is also clear that when a trust beneficiary has complete and unrestricted control over the assets and the trust, that trust is extinguished. He finds from the evidence that Iozo is in complete unfettered control over those assets, that he used that for his own benefit, and that for those reasons, as the sole beneficiary and trustee in Illinois, the law is clear that those trust cannot be used to shield assets from creditors when that beneficiary has full unrestricted access to the trust assets. Every case that is applicable that exists in this case, I believe, has that proposition. Cited by both sides. The appellants don't comment at all in the briefing on the record, on the facts. They don't challenge the facts. They don't challenge that Iozo had unfettered control of the trust assets to avoid the bare judgment. They abandoned any arguments they had before. They don't reference Elaine's abuse by Mark Iozo, not including her in decisions. I won't go into all of the Elaine's testimony. You read the bullet points in the briefs. The replacement of Elaine by his trusted college friend who was never a trustee before. But during the pendency of this case, the funding is lavish. Lifestyle, paying for his house mortgage through it, credit card payments, it was a little bit under $3 million in five years. Five exotic trips just in the first three to four months of 2017, which was after the citations. After the judgment against Iozo personally. Five trips in four months. Exotic trips. Europe, Florida, Utah. You read it. He then orchestrated a questionable transaction of the business, Ogden Lincoln to West Mount Lincoln, and used $1.295 million of the trust. Elaine knew nothing about that. He then lowered his compensation from $265,000 to $28,000 as part of this whole scheme that he had to do anything possible to avoid paying his friend what he owed him. After the judgment, he changed the rent payment to the discretionary trust, which had been from West Mount Lincoln, $32,500 to the discretionary trust, the only income trust other than perhaps interest. He changed that to the Fred Iozo trust. He did that by directing Flake to do that. He didn't ask any questions like he never did. Just rubber stamped everything. That was $32,500 a month he diverted from the discretionary trust. He used the trust assets as his piggy bank. Undisputed. There are also guarantee documents in the record I wanted to point out. Record page 129, I believe. A guarantee was signed on behalf of the trust. Mark signed as the beneficiary of the trust. The beneficiary and then confirmed that in his testimony at the evidentiary hearing. The standard with respect to this matter, I'll mention quickly the court knows what the standards are. I don't have to tell it. But it's against the manifest weight of the evidence. It's not a de novo review. I'm not sure that matters in this case based on the facts and the law. I also noted that each trustee can independently do what Mark did even if Elaine was part of it. There's no evidence of a five-year standard of living. I will note that Iozo was probably in his 30s or younger during those prior five years. That's not an ascertainable standard. Aside from the egregious conduct that violates what all the laws provide about accessing the trust corpus and the assets, the trust language essentially also gives Iozo that same discretion and authority. There are no limits. We have the sole discretion with respect to Iozo's support. We have the children's support, sole discretion used twice in that section with respect to unusual items. We have limited powers of appointment, sole discretion is the language. The term may has to be based on an instrument in writing. That didn't happen. Unusual circumstances didn't happen. And then death. It's interesting in section three in the death section, it contemplates that there might not be assets if the assets have not been distributed by death. And then living language. We also need to look at article nine. I think each separate trust is not really defined, but a proper reading of this trust document provides that this discretionary trust is a trust that is being discussed in section nine. Section five uses the term desirable and best interest. Section nine uses the terms discretion, best interest, comfort, convenience, happiness. It also provides that the trustee does not have to consider the benefit of the beneficiary or the remanderment, that he can terminate the trust or eliminate the contingent interest. All of these items provide that this is a trust that did not have an ascertainable standard. It was limitless. All the case law is consistent. Beneficiary cannot have confederate access, cannot be the beneficiary and the trustee. I won't comment on Sheridan. I think that's self-apparent. With respect to the intervention, I think there's a large issue on jurisdiction. I think that the position we asserted in our brief is the correct position, and that is that since this is a supplemental proceeding, the motion to set aside was filed during the supplemental proceeding after the individual judgment and the appeal affirmation, that 304B4 applies. And it provides for a 30-day appeal period. I don't think there's anything inconsistent where there's a final judgment. Inland case talks about the final judgment, including judgments that dispose of rights partially or in full during the controversy. In this case, as a result of the petition intervened, the children's rights were disposed of. It was a final judgment and needed to be appealed within 30 days. With respect to the motion to dismiss, filed as an attachment to the petition to intervene, had the same issues. Not all of them, but all the issues in the motion to dismiss were issues raised for two years by the attorneys for the trustees. The trust language, again, provides the contingent nature, clearly contingent nature. Schlotzer, too, does the same. There was clearly an adequate representation of interest. The appellant cites the city of Chicago versus John Hancock with respect to the standards regarding adequacy of representation, but they don't apply it. And when the court looks at those standards, those are clearly applicable. There are two new arguments in the reply that are not appropriate, the Illinois Trust Code arguments and the Trust and Trustees Act arguments. And the court properly found that intervention was denied, the interests were aligned, they're clearly contingent beneficiaries, and there's nothing in here that they are, in the entire trust, that they are direct beneficiaries. For those reasons, we would ask the court to please affirm the motion to set aside as well as the ruling on the petition to intervene. Thank you. Thank you very much. Justice Hudson, your questions. Mr. DelGiulis, with regard to the issue of whether this court lacks jurisdiction because the IOZO petitioners allegedly did not file a notice of appeal from the trial court's final order denying, which you call a final order denying leave to intervene, orders entered in citation proceeding to discover assets are said to be final when the citation petitioner is in a position to collect against the judgment debtor or a third party or the National Life Real Estate Holdings case and the International Bank of Chicago. In light of the fact here that arguably the trial court's order denying the petitioner's leave to intervene did not in and of itself put your client, the citation petitioner, in a position to collect any assets from Mark, nor did it prevent your client from doing so in the future, why are you saying that that order of September 24th was the final order? Your Honor, we're basing it on the decision in Inland and a couple of the other cases that have been cited in this case, I don't have them at my fingertips, that apply that standard that Inland states with respect to a final order vis-a-vis 304B4, and that language is if it terminates the litigation between the parties on the merits or exposes the rights of the parties either on the entire controversy or a separate part thereof. Using that standard provides the basis for this being a final order against the children because their rights to contest and the set-aside are extinguished, and because of that we believe the interpretation is that 304B4 does in fact apply. But you've read National Life Real and you've read the International Bank of Chicago cases? Yes. How does that compare with what you just argued? I'm trying to find National Life. I don't have it in my notes based on the, I think that's the defendant's name. I recall reading that language and I recall saying that this must be just a partial analysis based on the facts of that case where a judgment debtor was looking to get a collection of, a creditor was looking to get a collection of the judgment, whereas here the issue was simply that the motion to set aside was being fought by the other parties and there was not a vested right and this final, this was a final judgment as to these descendants, so it puts it squarely within the language of the Inland case as well as some of the others which I don't have at my fingertips, but I can supplement that if you would like. All right, thank you Mr. Gilgamesh. That's all I have. Okay, thank you. Justice Brennan. Mr. DelGiudice, so if I read Judge Fullerton's ruling, he obviously focuses on the practicalities of how Mark as trustee and beneficiary basically utilized the assets of the trust to fund his lifestyle without any kind of oversight or to use the language unfettered discretion and you ask us to affirm that decision. My question is this because I haven't found it and if you found it I'd like to know what the site is. Is there a single Illinois case that's published that merges or sets aside a trust because of merger where the terms of the trust itself didn't raise the merger concern? You understand that question? I think I do. Let me ask it again. So, I think we'd all agree that if we looked at the terms of the trust and the terms of the trust, you know, gave the beneficiary unfettered discretion to do whatever he wanted with the corpus with no oversight that that would be a situation where merger would apply into the terms of the trust and it could be set aside under 1403. We would agree with that if that existed, right? Yes, yes. My question is this. Assuming, let's just assume for a moment that the terms of this trust were not inherently problematic in that regard. If that's the case, is there any case that says, look, we're just going to look to how the beneficiary and the trustee is actually dealing with the corpus, what they're actually doing, and we look at what they're actually doing and it's exercising unfettered discretion. Is there any reported case in Illinois where just based on that, what's actually happening, a trust is set aside independent of the terms of the trust? I do not recall seeing a case that is squarely states that. I think there is a distinction that we believe that the terms of the trust are problematic. I just want to make sure that we're on the same page that if there's not a problem with the terms of the trust, at least I have not identified an Illinois case. I've seen cases in other jurisdictions and bankruptcy cases, but I've not identified an Illinois case that sets aside a trust based solely upon what's happening on the ground, if you will, versus the terms of the trust. You don't have one either. I don't know if this is properly answering the question, but all of the cases that provide where the beneficiary has unfettered access to the assets of the trust support Judge Fullerton's ruling. Whether they characterize that as a merger issue, many of the other cases also talk about how you cannot be the trustee and the beneficiary, and that supports Judge Fullerton's ruling as well. In terms of your specific question, I cannot candidly say that I'm aware of a case like that. Well, I have another question. So, in these trusts, this concept of health education or maintenance support, that type of language that governs how trustees will distribute monies, I mean, those are generally accepted, right? There's nothing wrong for the maintenance or support of the beneficiary. You would agree with that? Yes, I think those are our standard clauses, and I think what we have here is that there's an attempt by the appellants to characterize this trust as having an ascertainable standard when it doesn't, because of all of the other language we've talked about. Especially as to what? With respect to both Iozo and the children, there's no limitation on what Iozo can pay himself in this document. I mean, someone could, I suppose, find out what his total spending was over a period of five years, the average, and say that that is the definition of support in this document. Why is attaching it to your average spending over the last five years turning it into something under the terms of the trust that makes it without any kind of an ascertainable standard? Well, I think it's the sole discretion aspect of this, and it's also the language in sections 9 and 5, which we believe was intended to, this discretionary trust is one of the discretionary trusts with capital letters that article 5 talks about. All of that language in section 9 about comfort, convenience, happiness, best interest, et cetera, in the sole discretion, those are the buzzwords of decisions which state, some of them are in this case, which state that that is not control, that doesn't avoid the unfettered aspect of it. I would agree with you, except I read this trust as that language, you know, for the happiness, et cetera, that applies to discretionary trusts created by the trust vis-a-vis Mark itself. Do you think that's an unfair reading? I think the clear reading, and we scrutinize this, is that it does apply, and, you know, maybe the drafter didn't intend it to apply, but based on the language used, you know, this trust itself is a discretionary trust, capital D, capital T, and it contemplates that there can be more. So that's the way we read that, and we also believe that the, you know, aside from the, we don't believe that, we believe that the actual conduct, we believe the trust clearly creates unfettered access through its language, regardless of what maybe Fred and his attorney would have wanted to intend, and we also believe that the case law, the common law supports that finding as well, that you cannot have a beneficiary with unfettered access, and the, you know, and the Illinois trust code, while it doesn't, it's raised for the first time in an applied brief, to the extent it is applied, it doesn't have any relevance here because it doesn't apply because of its effective date, January 1, 2020, to proceedings that are in that the common law remains part of this act. All right, thank you. Thank you. All right, thank you. I have no questions. Mr. Vidalio, rebuttal. Yes, picking up where I didn't catch which justice asked the question, but the issue about case law in Illinois that supports the view that, assuming there's a standard in the trust, has it ever been set aside? And I think that what we had taken pains to point out is that all of the cases, their sites, are cases in which the trust language itself was what the court was looking at, and the trust requirements itself was what the court was looking at. Following up on Mr. DelGiudice's comment about Article 5 and 9, and following up again on the justice's comment, Article 5 and Article 9 relate to separate trusts for the children. They are discretionary trusts, no doubt, but they also use the language separate trusts, and that is the reason for the distinction in the standard for the separate trusts. I also want to point out that the first recital of the trust itself says that Elaine and Mark are trustees, and when Elaine became no longer able to be a trustee, both Elaine and Mark were replaced with Mr. Flagg at that time. And let me see if there's anything else that I wanted to comment on. I think the bottom line is that their arguments all focus on avoiding the clear intent of the settlor, Fred Ayozo Sr., with what he wanted to do with his money, and I'll try to answer any further questions. Justice Hudson? No further questions. Justice Brennan? No questions, thank you. You agree that the standard of review is manifest way to the evidence? If there had been any evidence in the trial court supporting the 1403 findings or to the contrary of what we argued, I would agree with you. We argued that this should be de novo because there is no evidence, no evidence, on Barrett's side of the equation with respect to whether or not the criteria of 1403 were met. All right, thank you. Mr. Kelly, rebuttal? I don't have anything further unless you have any further questions. Justice Hudson, any questions at all? I do not. Justice Brennan? No, thank you. All right, I have no questions either. The court thanks the parties for their arguments today. The case will be taken under advisement. A written decision will be issued in due course. The court stands adjourned for today. Thank you.